IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IOU CENTRAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| | : | 1:20-CV-2116-LMM |
| v. | : | |
| | : | |
| | : | |
| ANDREY A. ROSIN, GENNEDY | : | |
| LEBEDEV, DENIS LEONTEV, | : | |
| INTOACTIONTREATMENT, LLC, | : | |
| and FUTURE NOW DETOX, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendants' Amended Motion to

Dismiss [20], Defendants' Motion for Sanctions [22], Plaintiff's Amended Motion

to Strike [35], Plaintiff's Motion for Leave to File Response and Cross Motion

[37], Defendants' Motion to Stay [40], and Defendants' Motion to Vacate Default

and Motion to Strike [50]. After due consideration, the Court enters the following

Order:

### I. BACKGROUND

Plaintiff IOU Central, Inc., a lender, claims that Defendants Andrey A.

Rosin and Intoactiontreatment, LLC ("Loan Defendants") breached a promissory

note and guaranty that they signed in exchange for a loan from Plaintiff. Dkt. No.

[25]. Plaintiff alleges that Defendants Gennedy Lebedev, Denis Leontev, and

Future Now Detox have ties to the Loan Defendants that make them liable for the Loan Defendants' alleged breach. Id.

Before Plaintiff sued in this Court, it filed substantially the same suit against the Loan Defendants in Florida's 11th Judicial Circuit on January 27, 2017. Dkt. No. [20-1] at 2. The litigation in the Florida case is ongoing and has progressed significantly since it was first filed. Dkt. No. [20-3]. The Loan Defendants answered and filed predatory-lending counterclaims based on Florida law. Id.; Dkt. No. [40] at 2. Plaintiff answered and moved to dismiss the counterclaims, but the Florida court denied that motion. Dkt. No. [20-3] at 4. On February 12, 2019, more than a year after Plaintiff first filed its case in Florida, it served interrogatories, requests for admission, and requests for production. Id. Defendants answered Plaintiff's discovery requests and twice served their own, but they contend that Plaintiff had failed to respond as of August 24, 2020. Dkt. No. [40].

Plaintiff filed a motion for summary judgment in the Florida litigation, which the Florida court denied following a hearing. Id. at 3; Dkt. No. [20-4] at 2. Plaintiff then moved for rehearing and reconsideration, and the Florida court denied that motion. Dkt. No. [20-3] at 3. Plaintiff moved to strike Defendants' demand for a jury trial on their counterclaims, and that motion was also denied. Id. at 2. The pretrial hearing in the Florida case was set for October 8, 2020.

On May 18, 2020, after the Florida case had progressed through discovery and summary judgment, Plaintiff filed suit in this Court. Dkt. No. [1]. Soon after,

2

Plaintiff filed a motion to stay the Florida case, and the Florida judge denied

Plaintiff's motion based upon the following reasoning:

> The Court reviewed the Motion and the rest of the file, which for the first time in three years has become active, now in two states, including an Appeal to the Third District Court of Appeal. The Court notes the Plaintiff brought this action in 2017 but failed to bring it to a conclusion within 18 months as suggested by Florida's Supreme Court, while at the same time claiming their prior counsel failed to include all parties to the claim and now asks for a Stay so a later filed action can proceed. . . . This matter will be set for a Case Management Conference in about 30 days unless a stay is requested and thereafter entered in the Third District Court of Appeal.

Dkt. No. [40-1] at 2.

Defendants argue that the Court should abstain from hearing this case

because it is substantially the same as the ongoing Florida case. Dkt. No. [40].

Plaintiff disagrees and argues that this case is not parallel to the Florida one. Dkt.

No. [43]. Before turning to this abstention issue, the Court addresses several

other motions that are pending in the case.

## II.   THRESHOLD MOTIONS

### A.   Defendants' Amended Motion to Dismiss

Defendants have collectively filed an Amended Motion to Dismiss. Dkt. No.

[20]. Not long after they filed that Motion, Plaintiff filed an Amended Complaint,

which addressed some of the deficiencies highlighted by Defendants' Motion. In

light of the amendment, and because the Court is abstaining from this case,

Defendants' Amended Motion to Dismiss [20] is **DENIED as moot**. See S. Pilot

Ins. Co. v. CECS, Inc., 15 F. Supp. 3d 1284, 1287 n.1 (N.D. Ga. 2013) ("An

amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint." (citing Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006))).

### B.    Motions for Sanctions

Defendants have moved for sanctions against Plaintiff's counsel. Dkt. No. [22]. They filed this Motion before Plaintiff amended its original Complaint. They argue that Plaintiff and its counsel should be sanctioned because the original Complaint contained misrepresentations of which Defendants notified Plaintiff's counsel, and which Plaintiff's counsel failed to withdraw.

However, Plaintiff amended its original Complaint 13 days after the Motion for Sanctions was filed. Plaintiff's Amended Complaint corrected some of the allegations with which Defendants took issue. The remaining facts—like, for example, the allegation that the new Defendants received proceeds of the loan from the Loan Defendants—the Court does not find "objectively frivolous." Fed. R. Civ. P. 11; Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998). Further, Plaintiff's tactic in bringing this case to federal court during the pendency of the state court action, while suspect, rested upon an arguable legal basis. Plaintiff's conduct here simply does not rise to a level that the Court finds sanctionable.

Plaintiff has also moved for sanctions based on Defendants' failure to withdraw their Motion for Sanctions and Motion to Dismiss after Plaintiff amended its original complaint, among other reasons. Dkt. No. [35]. The Court

has considered the grounds Plaintiff raises but does not find that Defendants'
conduct rises to a sanctionable level.

Accordingly, Defendants' Motion for Sanctions [22] and Plaintiff's Motion
to Strike, for Sanctions, and Response to Motion [35] are **DENIED**.

### C.   Plaintiff's Motion for Leave to File Response and Cross Motion

Plaintiff has filed a Motion for Acceptance of Response and Cross Motion.
Dkt. No. [37]. This Motion simply asks the Court to consider certain filings of
Plaintiff's. That Motion is **GRANTED as unopposed**.

### D.   Defendant Future Now Detox's Motion to Vacate

Defendant Future Now Detox has moved to set aside the Clerk's entry of
default. Dkt. No. [50]. It argues that it has not been properly served and that, in
any event, it has joined the other Defendants in filing a motion to dismiss or stay,
so it has properly defended this case. Plaintiff opposes Defendant's Motion. Dkt.
No. [52].

Pursuant to Rule 55, a court "may set aside an entry of default for good
cause." Fed. R. Civ. P. 55(c). While there is no "precise formula" for establishing
when good cause to set aside a default exists, courts "have considered whether
the default was culpable or willful, whether setting it aside would prejudice the
adversary, and whether the defaulting party presents a meritorious defense."
Compania Interamericana Export-Import, S.A. v. Compania Dominicana de
Aviacion, 88 F.3d 948, 951 (11th Cir. 1996). These factors are not exhaustive, and
"courts have examined other factors including whether the public interest was

implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." Id. Good cause does not exist where a party demonstrates an intentional or willful disregard of the judicial proceedings. Id. at 951–52. Though the Eleventh Circuit has a strong preference for determining cases on the merits, the decision to set aside an entry of default is ultimately within the discretion of the district court. See Fla. Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993); Robinson v. United States, 734 F.2d 735, 739 (11th Cir. 1984).

Here, there is good cause to set aside the default as to Defendant Future Now Detox. Defendant has joined the other Defendants in litigating this case by filling the Motion to Stay, Dkt. No. [40], which asks the Court to dismiss or stay this case on abstention grounds. Further, as demonstrated in its Motion, Dkt. No. [50], Future Now Detox has a number of potentially meritorious defenses. Setting aside the default will cause very little prejudice to Plaintiff, if any.

Accordingly, Defendants' Motion to Vacate Default for Future Now Detox [50] is **GRANTED in part** and **DENIED in part**. The Court will direct the Clerk to set aside the default as to Defendant Future Now Detox. However, the remaining relief requested in Defendants' Motion is **DENIED without prejudice as moot** based upon the Court's abstention, to which the Court now turns.

6

### III.   ABSTENTION ANALYSIS

Defendants have asked the Court to stay or dismiss this case. Dkt. No. [40] ¶ 30. They argue that the Court should abstain under the doctrine announced in the Supreme Court's Colorado River case. Id. ¶ 22; see also Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). Plaintiff contests this motion, arguing that abstention is inappropriate.

Colorado River abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817. It is, however, a "narrow exception" to district courts' duty to adjudicate controversies, id. at 813, such that "[o]nly the clearest of justifications merits abstention." Jackson-Platts v. Gen. Elec. Capital Corp., 727 F.3d 1127, 1140 (11th Cir. 2013). Under Colorado River, a district court may abstain from a case "if (1) a parallel lawsuit [is] proceeding in state court, and (2) judicial-administration reasons [] demand[] abstention." Id. (citing Colo. River, 424 U.S. at 818–20). The Court examines these two factors in turn.

### A.   Parallel Lawsuit

The first factor of the Colorado River test asks whether "federal and state proceedings involve substantially the same parties and substantially the same issues." Ambrosia Coal and Constr. Co. v. Pages Morales, 368 F.3d 1320, 1330 (11th Cir. 2004). This does not mean that "the relevant federal and state cases share *identical* parties, issues, and requests for relief." Id. at 1329 (emphasis in

original). "Such formalistic requirements would fly in the face of the Supreme Court's clear efforts to fashion a flexible and holistic test for applying the Colorado River abstention principle." Id. at 1330 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983)). In fact, a case may involve "substantially the same parties, although some of the defendants in the Federal case . . . are not parties in the [state] case." Id.; Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988) ("The addition of federal defendants in the federal suit by itself does not destroy the parallel nature of the case. If it did, parties could avoid the doctrine of Colorado River by the simple expedient of naming additional parties.").

The Court finds that this case involves substantially the same parties and issues as the Florida case. Both cases involve the Loan Defendants' alleged breach of the promissory note and guaranty. Any differences between the two cases are ancillary to that substantial overlap.

In the Florida case, Plaintiff sued the Loan Defendants alleging breach of contract, breach of promissory note, breach of guaranty, "money lent," and unjust enrichment. Dkt. No. [20-1] at 2–4. In this case, Plaintiff has again sued the Loan Defendants and renewed its state court allegations as to them. Dkt. No. [25]. Plaintiff has also sued Defendants Lebedev, Leontev, and Future Now Detox and has added several claims that it did not plead in state court. Id. Plaintiff argues that its addition of new Defendants and claims means that this case and the Florida case are not parallel. Dkt. No. [43] at 14. The Court examines whether

Plaintiff's addition of new Defendants and peripheral claims makes this a substantially different case from the one in Florida.

### 1.   *Additional Defendants*

The additional Defendants have not substantially changed the case. In fact, the now-operative Amended Complaint contains few allegations regarding the three new Defendants. Dkt. No. [25]. Defendant Lebedev is mentioned only twice: once to say that he is a citizen of Florida and a second time to say that he owns property "attached" to the agreements at issue in the state court suit. Id. ¶¶ 2, 22.[1] Defendant Future Now Detox is mentioned to allege that it is a co-venture of the individual Defendants, to allege that it owns property "attached" to the agreements, and to allege that it is a successor company of Defendant Intoactiontreatment. Id. ¶¶ 4, 50. Similarly, Defendant Leontev is mentioned four times: (1) to name his citizenship, (2) to allege that he "conducted business" with Defendant Rosin, (3) to allege that he owns property "attached" to the agreements, and (4) to allege that he is a co-member of Defendant Future Now Detox. Id. ¶¶ 4, 22, 50. In short, while new Defendants have been added, they

---

[1] Plaintiff defines Defendants Rosin and Lebedev collectively as "Debtors." Dkt. No. [25] ¶ 2. And at times, Plaintiff argues that Defendant Lebedev guaranteed the loan to Defendant Intoactiontreatment. Dkt. No. [52] ¶ 2. But the Amended Complaint contains few individualized allegations concerning Defendant Lebedev, instead referring to "Debtors" collectively, which leaves it somewhat unclear whether Plaintiff alleges that Defendant Lebedev signed a personal guaranty. This ambiguity does not change the Court's analysis because Defendant Lebedev's putative obligation is still inextricably linked to the merits of the Florida case.

play such a small role in the Amended Complaint that they do not materially distance this case from the one in Florida state court.

In a similar case, the Eleventh Circuit held that the parties were "substantially the same" between a state and federal case despite the addition of two new parties to the federal case. Baker v. Warner/Chappell Music, Inc., 759 F. App'x 760, 763 (11th Cir. Nov. 27, 2018) (per curiam) (unpublished). In Baker, a family of companies sued another family of companies in state court for infringement of their copyrights in certain songs. Id. One of the state court defendants then sued the state court plaintiff in federal court and was joined by two individuals who claimed ownership rights in the songs at issue in the state case. Id. The two individuals—plaintiffs in the federal case, but not parties in the state case—did not undermine substantial similarity between the federal and state cases because they were "beneficial owners" of song rights at issue in the state proceeding. Id. ("Although Baker and Smith are not parties to the state action, as 'beneficial owners' their alleged interest is inextricably linked to Music Specialists's ownership interest, which is directly at issue in the state proceeding."). "As such, the parties in the state and federal proceedings [we]re 'substantially' the same . . . ." Id.

Likewise here, Plaintiff has added the new Defendants in attempt to attach their property should it prove its breach of contract claims. Dkt. No. [25]. In fact, the specific basis for the additional Defendants' liability is not altogether clear since they were not parties to the promissory note and guaranty (with the

10

possible exception of Defendant Lebedev). The Amended Complaint includes a boilerplate refrain that that the new Defendants "knew, benefitted, consented and ratified" the loan agreements at issue, Dkt. No. [25] ¶¶ 12–19, but Plaintiff has not alleged facts supporting this allegation. See also id. ¶ 21 (setting forth a litany of boilerplate legal conclusions about the relationships between Defendants collectively).

The newly added Defendants have moved to dismiss Plaintiff's claims as inadequately pled. Dkt. No. [20] at 5. They point out that nothing in the loan agreements entitles Plaintiff to attach property of the newly added Defendants. Id. at 7. The Court declines to address this argument, since the Amended Complaint has mooted Defendants' Motion to Dismiss, but the tenuous nature of Plaintiff's claims against the newly added Defendants certainly supports the conclusion that their presence in this case does not materially distinguish it from the Florida case.

Merits aside, Plaintiff's adding new Defendants whose property it hopes to bind to a judgment does not alter the substantial identity of this action to the Florida case. Both cases are about the Loan Defendants' alleged breach of the promissory note and guaranty. Because the ostensible liability of the new Defendants requires the attachment of their property through the agreements, their rights are "inextricably linked" to those of Defendants Intoactiontreatment and Rosin, "which [are] directly at issue in the state proceeding." Baker, 759 F. App'x at 763; see also Ambrosia Coal, 368 F.3d at 1330 ("The Federal Case and

the Puerto Rico Case involve substantially the same parties, although some of the

defendants in the Federal Case—in particular, the Green Isle defendants—are not

parties in the Puerto Rico Case. The two cases involve substantially the same

issues as they relate to the validity of the Agreement and Pages's performance of

his obligations thereunder."). Accordingly, the Court rejects Plaintiff's argument

that this case is not parallel because of the addition of new parties.

### 2.   *Additional Claims*

The issue in this case is also substantially the same as that in the Florida

case: whether Defendants Intoactiontreatment and Rosin are liable for breach of

the promissory note and guaranty. Plaintiff alleged in Florida state court the

following claims:

>       Count I – Promissory Note
>       Count II – Breach of Contract
>       Count III – Guaranty
>       Count IV – Money Lent
>       Count V – Unjust Enrichment

Dkt. No. [20-1]. Here, Plaintiff has alleged the following claims:

>       Count I – Declaratory, Equitable, and Related Relief
>       Count II – Breach of Instruments and Related Relief
>       Count III – Breach of Fiduciary Duty of Trust to Creditor and Related
>       Relief
>       Count IV – Quantum Meruit/Unjust Enrichment and Related Relief
>       Count V – Equitable Lien/Equitable Mortgage and Related Relief
>       Count VI – Constructive Trust and Related Relief
>       Count VII – Attorney's Fees and Related Relief

Dkt. No. [25]. Thus, Plaintiff's case before this Court is a breach-of-contract case

with several pendant equitable claims through which Plaintiff hopes to reach the

new Defendants and their property. While Plaintiff contends that its addition of new or different claims to the federal case distinguishes it from the state case,[2] the *issues* are identical, and the new claims do not substantially change that identity.

In a similar case, the Eleventh Circuit held the issues were substantially the same between a state and federal case despite the addition of new claims to the federal case. See Wilson v. Bank of Am., N.A., 684 F. App'x 897, 900 (11th Cir. 2017) (unpublished) (per curiam). A Florida state court had previously entered a final judgment of foreclosure against the Wilson plaintiff. Id. at 898. The plaintiff filed with the state court a motion for rehearing on the foreclosure, raising the argument that Regulation X of RESPA precluded the bank from foreclosing. Id. The state court denied rehearing, and the plaintiff appealed both the final judgment and the denial of rehearing. Id. at 898–99. While the state court case was on appeal, the Wilson plaintiff sued the bank in federal district court for

---

[2] Plaintiff attempts distinguish the issue in this case from that in the Florida case only on the ground that this case involves "in rem remedies," whereas the Florida case involves "in personam claims." Dkt. No. [43] at 13–14. However, both cases are in personam, so the Court reads this argument to mean that the cases are different because Plaintiff has added claims through which it seeks to reach Defendants' property to satisfy its claim for breach of contract. If Plaintiff is arguing that this *case* is in rem in its entirety, that argument is wrong. The Court has not exercised jurisdiction over any property. See, e.g., Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1171 (11th Cir. 2011) ("Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world."); United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1113 (5th 1992) ("No *in rem* suit can be maintained without a valid arrest of the *res* by the marshal.").

violation of Regulation X. Id. at 899. The plaintiff also alleged violations of separate loan-modification regulations, 12 C.F.R. § 1024(b)(2) and (g). Id. Nevertheless, the district court abstained from hearing the federal case; "the district court found the cases [we]re substantially similar because the issues [we]re the same." Id. at 900.

The Eleventh Circuit affirmed. Id. It rejected the plaintiff's argument that he was seeking different relief in the federal case because he had added new claims: his "state and federal cases involved substantially the same issues, because his federal claims [would] require a determination of whether the Florida court's foreclosure judgment was correct." Id.; see also Baker, 759 F. App'x at 763 ("[B]oth the state and federal proceedings here concern the same issue: ownership of and licensing rights to certain musical works.").

Likewise here, Plaintiff's new claims are part and parcel of the breach of contract that it alleged in Florida state court and has raised again in this case. To be sure, Plaintiff has added several claims through which it seeks to attach the property of all Defendants. But these claims derive from Plaintiff's claim against Defendants Intoactiontreatment and Rosin for breach of contract. Plaintiff can only succeed in its efforts to bind the new Defendants to a judgment if it shows a breach or a related equitable basis for liability—claims that comprise the entire Florida case. Put another way, the addition of new *claims* does not change the fact that this case and the Florida case involve the same *issue*.

In sum, the Court finds that this case is parallel with the case Plaintiff filed in Florida state court in 2017. While Plaintiff has added new parties and several new claims, this is substantially the same breach-of-contract case as the one Plaintiff filed in state court. To hold otherwise would require that the "federal and state cases share *identical* parties, issues, and requests for relief," and under that rule "only litigants bereft of imagination would ever face the possibility of an unwanted abstention order, as virtually all cases could be framed to include additional issues or parties." Ambrosia Coal, 368 F. 3d at 1330. The Court now turns to the next step of Colorado River abstention: whether judicial administration factors support abstention.

### B.    Judicial Administration Factors

In addition to considering whether this case is parallel to the one in Florida state court, the Court must also weigh a list of factors when "analyzing the permissibility of abstention," Id. at 1331:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

Id. To these six factors the Supreme Court has added a seventh: whether "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River." Id. (quoting Moses H. Cone, 460 U.S. at 17 n.20). "No one factor is necessarily determinative." Colo. River, 424 U.S. at 818. "The weight to be

given to any one factor may vary greatly from case to case." Moses H. Cone, 460 U.S. at 16. The factors "must be considered flexibly and pragmatically, . . . [and] the abstention inquiry must be 'heavily weighted in favor of the exercise of jurisdiction.'" Ambrosia Coal, 368 F.3d at 1332 (quoting Moses H. Cone, 460 U.S. at 16)). The Court addresses each factor in turn.

### 1. *Whether a Court has Assumed Jurisdiction over Property*

The first factor asks whether one of the courts has established jurisdiction over contested property. The Eleventh Circuit has clarified that this factor deals with in rem jurisdiction. Id.; Wilson, 684 F. App'x at 901 ("The first factor favors abstention because the Florida court already had jurisdiction over Wilson's property and the federal court necessarily would decide whether the foreclosure judgment was correct."). When "the relevant cases are not proceedings in rem, neither court has jurisdiction over the property, and the first Colorado River factor does not favor abstention." Ambrosia Coal, 368 F.3d at 1332; Baker, 759 F. App'x at 763 ("[T]he relevant cases are not proceedings *in rem* so this factor is inapplicable . . . ."). The case in Florida and the one before this Court are in personam, not in rem. Like in Ambrosia Coal, Plaintiff here is "primarily seeking damages and [] equitable [relief on] a contract." Id. Accordingly, this factor does not weigh in favor of abstention.

### 2. *The Inconvenience of the Federal Forum*

The second factor examines whether the federal forum is inconvenient. "This factor should focus primarily on the physical proximity of the federal forum

to the evidence and witnesses . . . ." <u>Ambrosia Coal</u>, 368 F.3d at 1332 (citation omitted). Here, all Defendants reside in Florida. Dkt. No. [25] ¶¶ 2–4. The property that Plaintiff claims may satisfy a judgment is also located in Florida. <u>Id.</u> ¶ 22. Plaintiff has its principal place of business in Georgia, <u>id.</u> ¶ 1, but it initially chose the Eleventh Judicial Circuit in Florida as a forum. It has done so in at least six other cases. <u>See</u> Dkt. No. [40-2]. The Florida court is more convenient for most of the parties and nearer to the property that Plaintiff seeks to use to satisfy a judgment. Accordingly, this factor weighs in favor of abstention.

### 3.   *The Potential for Piecemeal Litigation*

The third factor directs the Court to evaluate whether it may avoid piecemeal litigation through abstention. The Eleventh Circuit has emphasized that overlapping cases counsel in favor of abstention under this factor:

> Our case law instructs that while the potential for piecemeal litigation does not in and of itself weigh in favor of abstention, the probability of "abnormally excessive or deleterious" piecemeal litigation does. . . . Here, Baker and Smith filed a suit in federal court seeking to determine the same ownership and licensing issues pending in state court (and arguably already decided in an earlier state-court proceeding) . . . . This parallel federal litigation is not tangentially or somewhat related to the state suit—the issues are essentially identical. The possibility that this Court and the state Court will come to contradictory conclusions on which licensing agreements are lawful and which parties own the songs could certainly create "piecemeal litigation that is abnormally excessive or deleterious." <u>Ambrosia Coal</u>, 368 F.3d at 1333.

<u>Baker</u>, 759 F. App'x at 763–64.

The same circumstances that counseled in favor of abstention in <u>Baker</u> counsel in favor of abstention here. This case is substantially the same as the case in Florida state court. The Florida case has progressed through summary judgment and stands on the cusp of trial. There is a stark risk of "contradictory conclusions" which might result in "abnormally excessive or deleterious" piecemeal litigation. <u>Id.</u> There is also a serious risk that the Florida case may result in a judgment on the breach-of-contract issue that would make Plaintiff's primary claims here subject to dismissal on *res judicata* grounds. This case overlap poses a high risk of wasting judicial resources. Accordingly, this factor weighs heavily in favor of abstention.

### 4. *The Order in Which the Fora Obtained Jurisdiction*

The fourth factor examines which of the two courts has prior jurisdiction. This factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." <u>Moses H. Cone</u>, 460 U.S. at 21. Plaintiff filed this case in Florida state court on January 27, 2017 and filed its case here on May 18, 2020. The Florida state court obtained jurisdiction more than three years before this Court obtained jurisdiction. As discussed, the parties have advanced significantly in the Florida case, having conducted discovery and having passed the summary judgment stage, while in this case the parties are still going through preliminary motions practice. "Given the progress made in state court, this <u>Colorado River</u> factor weighs in favor of abstention." <u>Baker</u>, 759 F. App'x at 764.

### 5.    *Whether State or Federal Law Will be Applied*

The fifth factor is whether the case involves a difficult issue of state law. This factor "favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." Jackson-Platts, 727 F.3d at 1143. The Eleventh Circuit has held that a routine contract case like the one at issue here presents no complex issues: "federal courts are well equipped to decide contract cases under state law and routinely do so." Baker, 759 F. App'x at 764. Accordingly, this factor does not weigh in favor of abstention.

### 6.    *The Adequacy of the State Court to Protect the Parties' Rights*

The sixth factor is whether one of the two courts "would be incapable of protecting the parties' rights in a routine contracts action." Id. The Court finds that it and the Florida court are each adequately equipped to deal with the cause of action at issue, and so this factor does not weigh in favor of abstention. See Ambrosia Coal, 368 F.3d at 1334 ("This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights.").

### 7.    *Vexatious or Reactive Nature of Litigation*

The seventh factor is "the vexatious or reactive nature of either the federal or the state litigation." Moses H. Cone, 460 U.S. at 17 n.20. Here, Plaintiff filed suit in this Court after it had litigated for several years in the Florida state court— the forum it initially chose. The Florida court's docket reflects that Plaintiff engaged in extensive motions practice before and after its motion for summary judgment was ultimately denied. Dkt. No. [20-3]. It was only after having

19

reached that stage that Plaintiff filed this suit, which is substantially the same as the Florida case, in federal court. "This sequence of events indicates that this suit is likely reactive, weighing in favor of abstention." Baker, 759 F. App'x at 764 (holding that a federal suit was a reactive filing when the state court had already been asked to decide an issue that would settle plaintiffs' beneficial interests). Accordingly, this factor weighs in favor of abstention.

Based on the application of these seven factors, the Court finds that abstention is appropriate in this case. Plaintiff filed substantially the same case years ago in Florida state court, and the case has been ardently litigated there since it was filed. Litigating the case again here poses a high risk of piecemeal litigation and a high risk of inconsistent judgments between this Court and the Florida state court. The Florida state court is well suited to deciding the outcome of this action, which Plaintiff implicitly acknowledged when it first chose that court as a forum. While the Court acknowledges that it bears a "virtually unflagging obligation" to exercise jurisdiction when it exists, Colo. River, 424 U.S. at 814, this case presents "extraordinary circumstances involving the contemporaneous exercise of concurrent jurisdictions." Baker, 759 F. App'x at 762–63 (quoting Colo. River, 424 U.S. at 814). Plaintiff may not relitigate its case in this forum simply because it is displeased with the results in the Florida state court or because it wishes to attack Defendants on two fronts.

Accordingly, Defendants' Motion to Stay [40] is **GRANTED**. The Court will **STAY** this case pending the resolution of Plaintiff's claims in Florida state court.

### IV.   CONCLUSION

Based upon the foregoing, Defendants' Amended Motion to Dismiss [20] is **DENIED as moot**. Defendants' Motion for Sanctions [22] is **DENIED**.

Plaintiff's Motion to Strike, Motion for Sanctions, and Response to Motion [35] is **DENIED**. Plaintiff's Motion for Leave to File Response and Cross Motion [37] is **GRANTED as unopposed**.

Defendants' Motion to Vacate Default for Future Now Detox and Motion to Strike [50] is **GRANTED in part** and **DENIED in part**. The Clerk is **DIRECTED** to set aside the entry of default as to Future Now Detox. The remaining relief in Defendants' Motion is **DENIED without prejudice as moot**.

Further, Defendants' Motion to Stay [40] is **GRANTED**. This action is **STAYED** pending resolution of Plaintiff's Florida state court claims against Defendants Intoactiontreatment and Rosin. The Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case.[3] The parties are instructed to notify the Court at the conclusion of the Florida state court case as to the status of this case.

---

[3] Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner. The parties may move to re-open an administratively closed case at any time.

21

**IT IS SO ORDERED** this <u>20th</u> day of November, 2020.

**Leigh Martin May**
**United States District Judge**